Your Honor, good morning. Gary Burcham on behalf of Appellant Miguel Garibay. The District Court considers several different factors in affirming the seizure of Mr. Garibay at the Oceanside Chevron station. We submit that if this Court looks very closely at those factors individually, collectively, and also in light of the agent's experience and training, that the agent lacked reasonable suspicion to detain Mr. Garibay and, in fact, wasn't even close to having reasonable suspicion to seize Mr. Garibay at the gas station. I think the best way to talk about this sort of issue is just to go through the various factors that the District Court relied upon, so that's what I plan on doing this morning. The first factor articulated by the government and addressed and noted by the District Court in its order was the location of this gas station. And the Border Patrol agent, Agent Balow, said that because the gas station was one of the last gas stations before the San Clemente Border Patrol checkpoint, which is about 13 miles to the south of that checkpoint, and given its location, that it was an area that was known to be used for drug smuggling. Near the border, known for drug smuggling, and the last exit before the Border Patrol checkpoint. Exactly. There's a couple problems with giving much weight to the location of this gas station. The first one is the fact that this is a gas station located along I-5, which has several hundred thousand vehicles per day traveling on it in that area. Let me ask you a question. Do you believe that our determination about this should be made on each characteristic by itself, or do you believe that determination should be made on the determination of all the characteristics and the totality of them? Well, the law certainly requires a totality analysis, but... So then we have, as to the proximity of the border or the characteristics of the area, what you've already suggested, right? Then as to the previous alien or drug smuggling in the area, we have lots of smuggling in this area, and that the gas station is the site of prior bus. Then as to the appearance and behavior of the passengers, we have that the appearance of the expedition is clean, empty. It has Mexican license plates, and the records check showed that the history of the vehicle and the name of the person entering. And then as to the behavior of the driver, we have the driver paid in large bills, having no smaller one. Then the driver lied to the officer as to the question of whether he or his car had entered the U.S. recently. He said it hadn't entered for two in several months. Now, given all of that, are you suggesting that I can find there's no reasonable suspicion? That's exactly what I'm suggesting, Your Honor. And the reason why I'm suggesting that is because even though we look at these factors collectively, and in light of the training and experience of the agent, we also need to look at them individually at the same time to see what each one is probative of. Do you even attempt to discredit the agent's testimony as to these facts? With respect to the last point, absolutely, Your Honor. Where in the record do you discredit that the driver paid in large bills? Well, the driver had tried to pay in one large bill. Okay. So he paid in a large bill rather than a smaller bill, which is the norm for those who get large bills for their transactions. You don't discredit that, right? Well, number one, there's nothing in the record that says that these people were paid in large bills. Well, that's what the agent says. He said they're paid money for gas and for... Didn't the district court find the agent was credible, experienced, and well-trained? He did find the agent credible, but interestingly... Isn't that a fact determination? It is, but if you look at... And don't I owe real deference to that, because in those instances, he's there making the determination. He is there, but I read the district court's order in this case, and if you look at it carefully, the district court did not credit, the district judge did not credit the statement from Agent Ballow that Mr. Garibay, in response to the question of have you crossed the border or has the vehicle crossed the border, the district judge did not credit the agent's statement, which was the answer no and then I haven't crossed the border and the vehicle hasn't crossed the border, the vehicle doesn't cross the border. What the district judge put in his order was simply the answer no, and the reason why I think the district judge credited the answer no as opposed to the additional part of that answer is because that's what Agent Ballow put in his report, the report he contemporaneously made at the time that this arrest occurred. Interestingly, by the time we get to the evidentiary hearing, in the report he puts in quotation marks, the answer to his question was no, but by the time we get to the evidentiary hearing, the answer to the question suddenly becomes no and then two or three other statements which essentially lock Mr. Garibay into a lie. So I think the district judge, while he did find him credible overall by looking at the order in this case, did not credit his testimony with respect to what the answer of Mr. Garibay was and whether that answer constituted a lie or whether it was simply a one-word answer to a compound question that remains fairly ambiguous for this court to analyze. Additionally ---- Kennedy, pardon me counsel. As to the last one, I thought you were going to talk about why the identification by Miguel Garibay that he had brought the car in when it was apparently brought in by a man called Isidro. Right. When he said that, didn't that give reasonable suspicion by itself? I believe not, Your Honor. Question. Okay. When he identified himself by Miguel, did that fact resonate with you? Answer. Well, I knew it was a different name than the individual that I thought I was going to be encountering because he'd done a record check and found that it had come in with Isidro. Sure. Right. So doesn't that give some suspicion that something's going on? Well, it may give some suspicion, but there's nothing else. Well, I mean, it adds to everything else, does it not? Well, I submit there is nothing else. Oh. I think that's the only thing, that's the only thing the government can use to advance the ball for reasonable suspicion in this case. But even looking at that element, I don't see any rule out there that says that someone who drives a car and then gets it to someone else and that person drives the car isn't necessarily involved in illegal acts or drug trafficking. No, no, no, no. If he had said Isidro brought the car in, my name is Miguel, no problem. But he doesn't say that. He says, I brought the car in, my name is Miguel. The record shows Isidro brought it in. Does the red light go on? He never says he brought the car in. He says the car had not crossed the border. It had crossed the border. It had crossed the border with a driver named Isidro. He says, I didn't bring the car in, my name is Miguel. Wait a minute. He didn't say that. He just said my name. The agent says, what's your name? And he says Miguel. And so based upon that, the agent deduces that a different person. And a little light goes on at that point. A very dim light, I would say, Your Honor. Let me ask, are you challenging the dog, the use of the dog and the qualifications of the dog? I'm focusing in this case on the reasonable suspicion. And rather than the arrest. Correct. The reason I ask is because the Supreme Court is currently considering what level of qualifications are required of a canine. For the dog. Exactly. I'm not going to concede on those issues, obviously. But I think at this point, the strongest issue are these factors. And something I think that this Court really should understand with respect to the credibility of Agent Ballup is what he testified to about the money, about the wad of money, before he saw the video. He testified in direct examination that he was behind Mr. Garibay in line at the convenience store, and he broke out a wad of bills and peeled off a $100 bill to pay for the energy drinks. Then they play the video from the convenience store, and it shows that he wasn't even around when Mr. Garibay was at the register. And by the time he got up there, he simply saw one bill, one $100 bill, being handed from the cashier back to Mr. Garibay. But unfortunately, the district court made a credibility finding with respect to Ballup, and how do you get around that? Judge Inhofe is a nice judge, and I think he was given him the benefit of the doubt overall. But I think if you look carefully at his written opinion, and also his comment following the motion for reconsideration, I think he explicitly excluded some of what Agent Ballup said from his analysis. And that includes, most importantly, I think, the alleged statement from Mr. Garibay when that consensual encounter occurred about the car coming across and what he knew or what his role was in that. And I think Judge Inhofe looked at the record, looked at the overall credibility of the agent, and decided, well, the answer from Mr. Garibay was no. It was not no, the car doesn't come across. It was just simply no. And based upon the compound question that was asked by the agent, I think that that's just too ambiguous for this court to factor into its overall analysis. So what we're left with is the fact that we're at a gas station along I-5. I mean, it's right next to I-5. I can't imagine how many customers they have at that gas station every year. Probably maybe 100,000, tens of tens. I think I've been by that many, many times. My daughter plays soccer down in San Diego. I know exactly where you're talking about. I stopped there on the way up here last night, and it's right next to the freeway, and there's a Denny's right there. But I think the point is, for example, the $100 bill for the energy drink. I'm sure that my husband and I have both done that. But the point is that that's one of the elements in isolation as opposed to taking it all in combination. I think that's, unfortunately, the standard that we're dealing with. It is, but I wouldn't back off the fact that the first element is a gas station. They've had three or four arrests at that station over 14 months where probably tens of millions of cars have driven by and probably hundreds of thousands of people have stopped at that station to buy gas, to buy something inside in the store, to go to the Denny's, which is right next door. And so to have three or four incidents at that location where we're probably talking about hundreds of thousands of customers there, that can't be an area that's well known for drug smuggling. There's just not enough activity there to reach that conclusion. The fact that the cars clean. Some people keep their cars clean. Some people keep their cars dirty. Agent Ballas said that he had encountered in his experience some vehicles that were clean. I think we can imply from that answer that most of the vehicles he's encountered in his cases where he found drugs were dirty. And so it's tails I win, heads you lose. I mean, if it's clean, then you're a drug smuggler. If it's dirty, you're a drug smuggler. And so I think that one provides no reasonable suspicion. The $100 bill, again, I think that not only did Agent Ballas just testify falsely as to that, but the fact that someone has a $100 bill and tries to buy something at a convenience store is indicative of nothing. One of the facts that I found compelling is that he testified that that particular place was used by the smugglers because they sent scouts up ahead to the Border Patrol area to see if it was operational, which we know sometimes it is and sometimes it isn't. Exactly. And I think the answer to that question, Your Honor, is that there was no activity or no acts by Mr. Garibay which in any way suggested that he was staging in that area. If he was just in his car sitting there doing nothing, hanging out, spending time on the phone, whatever, then perhaps the fact that this is known to be or said by the agent to be a staging area, then that might have more probative value. But in this case, we have him coming up. The car is parked at the pumps. He said there's nothing suspicious about that. Mr. Garibay was inside actively trying to buy something. And so there's no evidence at all that this was any sort of staging situation. So your view of these facts is that Agent Ballas was just, what, profiling? He was at a gas station on the I-5 peeking through people's windows when their car is parked at the gas pumps. We can't have Border Patrol agents doing that. We just can't have that. Who determines the facts in a motion to suppress? The district court is the fact finder. And what's my standard of view in undoing what the district court finds the facts are? It's clear. And then de novo is to conclusions of law. Exactly, exactly. May I have maybe a minute or two for rebuttal? Yes, you may. Thank you. Good morning, Your Honors. May it please the Court. My name is James Melendrez. I'm an assistant United States attorney. In this case, when Agent Ballas detained Mr. Garibay, he knew that the Silver Expedition had crossed into the United States from Mexico several hours earlier. He knew that someone other than Mr. Garibay had been the driver of the expedition when it came across. Now, how do you know those things? He knew those from the record check, Your Honor, that he obtained when he followed Mr. Garibay outside the mini-mart. So tell me the sequence of events here. He seized the expedition first? Your Honor, at approximately 1220, he pulled into the Chevron station. He observed the Silver Expedition. He made observations about its appearance, the Mexican license plate, the clemency. And then he does a check on the license plate before he sees? No. Then he walks into the mini-mart to try and locate the driver where he observes Mr. Garibay, walking up to the cashier to purchase the energy drinks with a $100 bill. Mr. Garibay is then advised by the store clerk that they can't break that large a bill and is advised there's a Denny's nearby where you might be able to get change. Agent Ballas, because he's in undercover clothing at the time, at that point, Mr. Garibay gets into the Silver Expedition and drives it a matter of yards, maybe 25 yards to the Denny's. It's at that point that Agent Ballas requests a record check on his Border Patrol-issued next telephone. He's advised that the vehicle had crossed earlier that day at 922 and was being driven at that time by a man named Isidro Ontiveros Delgado. He's also advised that that crossing occurred at the San Isidro Port of Entry. He then positions himself near the Denny's, waits for Mr. Garibay to come outside. It takes approximately 25 minutes. When he does, the agent approaches him and asks him, As Your Honors heard previously, the answer was Miguel, which struck Agent Ballas as odd. It resonated because he's expecting a different name. And then he also asked him, have you or the car crossed recently? And my opposing counsel, Mr. Bertram, indicated that the district court never made a finding or never credited that statement. That's actually incorrect. On page 15 of the excerpts of record at the hearing on the motion for reconsideration, Judge Anello specifically found that it was reasonable for Agent Ballas to interpret that answer as meaning that no, neither the expedition nor Mr. Garibay himself had crossed the border. And I just read a short excerpt. The district court stated, I think when you ask somebody on the street, did you or the car cross the border, and you say no, I think the agent can make a reasonable assumption that the person is denying that either he or the vehicle crossed the border. So that's another factor the agent had. So, in fact, the district court did make that finding, did find it reasonable for Agent Ballas to rely on it. And so I'll sort of pick up where I started. At the time that the agent detained Mr. Garibay, he knew that the vehicle had made a recent crossing from Mexico into the United States. He knew that the vehicle had been driven across the border by someone other than Mr. Garibay, who he now encountered 13 miles south of the checkpoint. Or maybe Mr. Garibay gave his name as he see it. Your Honor, that is a possible inference to draw. But again, that would raise a question. There might be more than a dim light that goes on at that point. And then finally, now the defendant says that the conversation that he had with the agent didn't occur until the agent had entered the vehicle. What do we do with that? Your Honor, that was obviously an issue of fact that the district court made a determination about. He specifically found, both in his written order and again at the motion for reconsideration, that Agent Ballas was credible. When the defendant testified, he was asked by the prosecutor, by me, whether or not he was a previously convicted felon. He refused to answer the question at the instruction of his attorney, but the attorney told the district court judge that he could take that fact under judicial notice in making the credibility determination as to Mr. Garibay. So I think clearly, to the extent there is a he-said-question about exactly when that conversation occurred, the district court made the finding that Agent Ballas had the credible story there. So the government's position, as outlined in the papers, is that given those three factors, in addition to the location where this occurred, the fact that Agent Ballas himself had made four previous drug busts at that location. It seems like they're slipping, they're getting through the border pretty, if this is happening, that frequently. Your Honor, I think that unfortunately the rate of successful smuggling is higher than anybody would like it to be at the border. And again, that's why I suspect the Border Patrol has a northern interdiction team that's located near the San Clemente checkpoint. Unless Your Honors have any additional questions, the government would submit on its papers and my comments today and request that this Court affirm the district court's denial of the motion to suppress. Thank you, Counsel. Your Honors, very briefly, Mr. Belenrez is correct that on page 15 the judge does talk about inferences that could be drawn, but the judge interprets his answer as no. The judge interprets the answer as simply no. Why did the agent add the extra stuff at the hearing? I don't know. Why did he testify falsely about the wad of money? I don't know. But what we have in this case is his report. I know, and there are, that's problematic, those things. But then how do we determine that the district court, who saw the demeanor in all the testimony, its credibility finding was clearly erroneous? That's the mechanism the Court has. The Court can look at the records and say, if this agent is untruthful this many times, maybe he's not credible. And again, I think the district court was being kind and gave him the benefit of the doubt, but we have a couple of serious discrepancies. And there's another one, the fact that he said that when he got the call from the people about the car having crossed four times and being referred to nervousness every time, that was also proven to be false later on. So three material elements in this case that went directly to the factors that he relied upon. I don't want to say he lied, but his testimony was deemed to be false, or his statements at the time were deemed to be false later on by reliable evidence. And so I know the clear air standard is difficult to meet generally, but this Court's hands are not bound by the district court's credibility findings. This Court … Were these discrepancies brought forward at the time the agent was examined? They were. And so Judge Anello knew about them? He knew about them. And again, I think he was being deferential to the agent, which I think a lot of judges tend to do. But in this case, we're not just up here saying that it was false and that's based on my belief or my client's belief. We have direct evidence in the record on three of these elements that the testimony he gave was absolutely false and was only corrected later on when the government, to his credit, came forth with the information about the reason for the secondary referrals. And the facts regarding nervousness were extremely weak. Someone holding onto the steering wheel and looking forward. And not to go too far over, but regarding that element, if the car's been sent to secondary before and searched and found to have nothing, that actually cuts against reasonable suspicion. So if they're advancing the ball … Actually, that's … we're learning a lot about smuggling now. And actually, don't they send it back and forth a couple times empty? Well, they can. As practice runs, see if they can get it … Sure, dry runs. I've been down there for 15 years doing this. I know about the dry run. But, you know, it's … One time somebody was nervous. They found nothing. Three times they just referred it. They found nothing. So just because … I'll close with this. Just because there's a bunch of factors doesn't suddenly lift them to reasonable suspicion under the totality analysis. If all the factors are zeros and we add them all together, then it's still zero. And I know that the judge made credibility findings about this agent. And I know he talked about his training and experience. But I'd urge this Court to look carefully at his testimony. Because it was false. It was misleading. And I think this Court could make a finding that the judge's credibility determination was clearly erroneous because there's ample evidence in the record showing that what Agent Vallow was doing was hanging out at the gas station next to the I-5 and hassling any Latinos who happened to stop their car there. And this Court should not tolerate that. The Fourth Amendment doesn't tolerate that. And we'd ask this Court to reverse the district court's judgment. Thank you very much, counsel. United States v. Garibay will be submitted.
judges: Wardlaw, Bea, Smith